# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

T.H., by his parent and natural guardian TIESHA
SHEPHERD,

Plaintiff,

vs.

CITY OF SYRACUSE; SERGEANT DENNIS REGIN, in
his individual and official capacities; AND OFFICER
PAUL ROSE, in his individual and official capacities,

Defendants.

Civil Action No.: 5:17-CV-1081
(GTS/DEP)

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFF'S MOTION TO COMPEL

## (A) "UNSUBSTANTIATED" COMPLAINTS AGAINST DEFENDANTS RELEVANT
## TO PLAINTIFF'S CLAIM OF EXCESSIVE FORCE AND

## (B) INFORMATION ABOUT THE SYRACUSE POLICE DEPARTMENT'S USE OF
## CHOKEHOLDS AND DEADLY FORCE AGAINST JUVENILES

Christina DeJoseph, Esq. (Bar Roll #: 514784)
Assistant Corporation Counsel
Office of Corporation Counsel – City of Syracuse
233 E. Washington Street
Room 300
Syracuse, NY 13202
(315) 448-8400
cdejoseph@syrgov.net

John G. Powers, Esq. (Bar Roll #: 508934)
Paul J. Tuck, Esq. (Bar Roll #: 520814)
Hancock Estabrook, LLP
AXA Tower I, Suite 1500
100 Madison Street
Syracuse, NY 13202
(315) 565-4500
jpowers@hancocklaw.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ...............................................................................................................2

ARGUMENT .................................................................................................................10

**I.**     **Unsubstantiated Complaints Regarding Sergeant Regin And Officer Rose Are Irrelevant and Undiscoverable** ........................................................................10

    *a. Motive and intent are irrelevant to Plaintiff's claims*....................................................12

    *b.. Deference must also be given to the documents protected status* ................................15

    *c. Even if unsubstantiated former complaints are discoverable—Plaintiff's currently articulated scope of discovery is overbroad* ....................................................16

**II.**     **Plaintiff is not entitled to the discovery he seeks relative to his pleaded *Monell* claim** ...............................................................................................................16

CONCLUSION ................................................................................................................2

# PRELIMINARY STATEMENT

Plaintiff T.H.'s ("Plaintiff's") position on this motion to compel unduly expands scope of discovery from that contemplated under the current view of the Federal Rules of Civil Procedure. Those rules provide that information sought in discovery is proper only if it is (1) *relevant* to the claims and defenses at issue in the lawsuit; and (2) *proportional* to the needs of the case. *See* Fed. R. Civ. P. 26(b). Plaintiff recites this rule but ignores its application, instead seeking categories of information that cannot, by definition or logic, make any fact in dispute in this case more or less probable than it otherwise would be. And, the information sought can only be used improperly in this action—it is of no value to the search for the truth regarding the matters in dispute.

*First*, Plaintiff seeks *unsubstantiated* complaints against Defendants Sergeant Regin and Detective Paul Rose regarding other allegations of misconduct unrelated to the facts and circumstances at issue in this case. In support of this request, Plaintiff's claimed theory of relevance is unmoored to his actual claim or defense at issue in this case, *i.e.*, whether the use of force against him was objectively unreasonable in this instance. Other complaints are obviously not relevant to this determination.

Setting aside for the moment that the complaints are *unsubstantiated*, by arguing that other instances are relevant to the issues of motive or intent, Plaintiff is actually arguing that he can use these instances to demonstrate that the Defendants have a *propensity* to use excessive force. This type of evidence is expressly rejected by Rule 404(b)(1) of the Federal Rules of Evidence. Moreover, "motive" is *not* an element of excessive force—which is an *objective* not subjective standard—and is not something the jury is charged to consider. *See* 3B Fed. Jury Prac. & Instr. § 165:23 (6th ed.). Moreover, even if motive were relevant to an excessive force claim, because the complaints are not unsubstantiated, they only become even arguably probative if they are proven

to the jury to have occurred by T.H.'s counsel by a preponderance of the evidence—implicating trials of other unrelated matters within the trial of this matter. Thus, it is for very good reason that the case law (cited below) holds that *unsubstantiated* prior complaints against police officers are not discoverable. This law appropriately balances considerations of relevance and proportionality with respect to discovery response.

*Second*, Plaintiff claims that he is entitled to *all* civilian complaints and use-of-force reports relative to chokeholds and use of deadly force on juveniles to support his putative municipal liability claim. As an initial matter, it is uncontroversial that complaints about *constitutional* conduct cannot support a claim against a municipality. To this end, there is no per se rule against the use of chokeholds by police or use of force against juveniles. Either can be excessive or not based on the individual circumstances of each incident. Thus, Plaintiff seeks a body of documentation having no relevance to the claims he has alleged. Moreover, Plaintiff's purported justification for seeking such information—policy or practice and "deliberate indifference" evidence—are not *Monell* claims that are pleaded in the Complaint. The only *Monell* claim that is even arguably pleaded in the Complaint—is that the City's written "Use of Force" policy is unconstitutional and thus caused the alleged unconstitutional individual conduct in this case. And, the NYCLU is presumed to know how to plead a *Monell* claim should it have a good faith basis to do so. It is black letter law that a party is not permitted discovery on claims that are not pleaded. Under the circumstances, the Court should reject any discovery requests based on liability theories that are not even contained with Plaintiff's pleading.

Accordingly, as explained more fully below, the Court should Deny Plaintiff's motion to compel in its entirety.

# BACKGROUND

*a. Factual background*

This case arises out of a highly-charged incident occurring in September 2016 involving several City of Syracuse police officers and dozens of Corcoran High School students. After school let out that day, a crowd of students gathered outside of J.T. Roberts School on Glenwood Ave., to either observe or participate in a fight. Detective Paul Rose, a School Resource Officer ("SRO") assigned to Corcoran High School, monitored the escalating situation and immediately contacted Sergeant Dennis Regin, the SRO supervisor, who arrived at the scene to assist Detective Rose. The officers witnessed and broke-up at least one fight between students occurring in front of J.T. Roberts School. Among the students present for the initial fight was Plaintiff T.H. and his twin brother T.M.H.

Once the original fight broke up, a large group of students proceeded down Glenwood Ave., toward South Avenue. The mob of students then reconvened on Clyde Ave., a block west of South Ave., behind *Swallows*, and began to fight again. Several police officers onsite began making arrests to deescalate the situation. At a certain point in time, Officer Regin arrested Plaintiff's brother, T.M.H., who had been participating in the fight, and escorted him to the back of a nearby police car. As this was occurring, Plaintiff T.H., shown in a tie-dye shirt, began physically interfering with the arrest.[1] Sergeant Regin, who was guiding T.M.H. to the police car at the time, attempted to push T.H. back at least two times, but T.H. continued to interfere with the arrest.

---

[1] There are at least two videos of the incident and arrest. All screen shots in this Memorandum are from a video posted on Syracuse.com and can be accessed at this web-address: http://www.syracuse.com/crime/index.ssf/2017/10/video_shows_chaos_at_scene_of_syracuse_14-year-olds_arrest_now_subject_of_lawsui.html Plaintiff has also produced this video during the course of discovery.



In addition to T.H., multiple students began to physically interfere with the arrest. T.H. continued to try to free his brother for more than 30 seconds after Sergeant Regin initially detained T.M.H. T.H. was aggressive and resisted any attempts to remove him from the situation.



At this time, the police were out-numbered and surrounded. Sergeant Regin felt compelled to activate his "officer in distress" signal with his left hand at the same time as he was trying to hold T.H. back from continuing to interfere with the arrest with his right hand.



The "officer in distress" signal is activated by police officers in only the most serious circumstances and effectively sends an emergency request to all available law enforcement personal in the vicinity to render immediate assistance. Though Sergeant Regin has experienced many dangerous scenarios in his 20 plus years as a police officer, this was the first time he ever had to activate his distress signal. He will testify that, at the time, he understood himself and the other officers present to be in a very volatile and dangerous situation. Sergeant Regin was concerned with the degree of physical contact being made by the mob participants and their proximity to the officer's side arms.

After it became evident that T.H. would not withdraw as a result of Sergeant Regin's attempts to pull and guide T.H. away from the arrest, Sergeant Regin secured T.H. from the back with both of his arms—his right draped over T.H.'s shoulder and his left underneath T.H.'s left arm. Sergeant Regin then physically backed T.H. away from the arrest and the mass of bodies surrounding the police car and Detective Rose's back. As Sergeant Regin backed up several steps with his arms around T.H., T.H. continued to struggle to free himself. Sergeant Regin then pivoted his hips to take T.H. to the ground, but remained behind him with his right arm coming

across the front of his body and securing his left bicep, with his left arm remaining underneath T.H.'s left arm.



Sergeant Regin used his legs to wrap T.H.'s lower body to restrain the lower half of his body.



At this point another officer assisted in handcuffing T.H., who was then arrested along with several other teenagers participating in the brawl. T.H. has alleged that he suffered a minor cut on his chin during this process that eventually required stiches. He was, however, conscious and apparently unhurt at the time he was arrested and was processed in the ordinary course along

with the other arrestees.  There is no objective evidence that he suffered any serious bodily injury because of Sergeant Regin's restraining actions.  T.H. reported no injury to his neck and indicated to health care providers that day that he never lost consciousness.  As a result of the events that day, T.H. was tried and eventually convicted in family court on the charge of Obstructing Governmental Administration ("OGA") 2nd for his conduct that day.

### b. The present action and procedural history

This lawsuit includes claims alleging excessive force under 42 U.S.C. § 1983 and the New York State Constitution, as well as the common law tort of battery, against Sergeant Dennis Regin and Detective Paul Rose.  The Amended Complaint does not define any claim against the City of Syracuse, and it does not reference *Monell.*  Nowhere is the phrase "*deliberate indifference*" or "*persistent and widespread . . . custom or usage*" used in the Amended Complaint.  Nor are plausible facts pleaded that would support such *Monell* theories.  *See generally* Dkt. No. 4 at ¶¶ 61-74.

The only *Monell* theory that can be inferred from the Amended Complaint (although perhaps not fully or plainly pleaded) is that the City's formal "Use of Force" policy is unconstitutional and, thus, caused the alleged unconstitutional acts by Defendants Regin and Rose.  *See* Dkt. No. 3 at ¶ 70 ("The violation of T.H.'s rights resulted from these constitutionally deficient use-of-force policies").  While the Amended Complaint does contain allegations about the failure to train regarding chokeholds, *see id.* at ¶¶ 72 − 73, those allegations, and the remainder of the Amended Complaint, contain none of the other plausible facts required to be alleged to set forth a deliberate indifference *Monell* claim.[2]  Nor is such a claim even mentioned in the Amended

---

[2] *See Bliven v. Hunt,* 478 F. Supp. 2d 332, 339 (E.D.N.Y. 2007), *aff'd,* 579 F.3d 204 (2d Cir. 2009) (the "simple recitation that there was a failure to train municipal employees," does not sufficiently allege a claim that would give rise to municipal liability.").

Complaint. Thus, at present, Plaintiff's *Monell* claim, if any is deemed to exist, turns on its ability to demonstrate that the City's written "Use of Force" policy violates constitutional standards articulated by the Second Circuit or the Supreme Court.

The parties have engaged in a mandatory mediation and preliminary fact discovery. As Plaintiff recounted, this dispute involves the discoverability of several categories of documents and interrogatories, namely, the following:

> (1) All complaints alleging the use of excessive force by Defendants Regin and Rose;
>
> (2) Identification of all lawsuits and notices of claim alleging the use of excessive force by Defendants Regin and Rose;
>
> (3) Use-of-force reports, incident reports, and internal investigation documents for the past five years involving either a chokehold[3] or (b) deadly force on a juvenile; and
>
> (4) Identification of all civil lawsuits and notices of claim alleging the use of chokeholds or use of deadly force on a juvenile within the past five years.

*See* Dkt. No. 33-1, pp. 4-5. Notwithstanding the parties' differences, Defendants have agreed to produce: (i) documents and information relating to disciplinary actions taken against Defendants Regin and Rose concerning allegations of improper use-of-force, as well as (ii) documents and information related to any complaints against Defendants Regin and Rose concerning their alleged improper use-of-force which have been *substantiated* whether internal or external, and (iii) a list of any lawsuits and all accompanying documents related to substantiated complaints of excessive use-of-force against any SPD police officer.

---

[3] Although Plaintiff has defined a "chokehold" in his discovery requests as "any technique that involves applying pressure to an individual's neck to inhibit the flow of blood or oxygen" and broadened such a definition to include "other techniques referred to as neck restraints, neck holds, and bar-arm control holds," *see* Dkt. No. 33-1, Defendants have objected, and continue to object, to Plaintiff's definition of a "chokehold."

In short, the essence of this dispute focuses on the discoverability of documents related to complaints and other documents related to lawful, constitutional conduct, *i.e.*, unsubstantiated or unfounded complaints and reports of use of force relative to the individual Defendants and SPD as a whole.

In context, it is important to understand the citizen complaints can arise out of any occasion where an arrest involves the use of force. And, the evaluation of whether force is proper or excessive on any given occasion is entirely and only dependent on the specific facts and circumstances of that individual event. Thus, it is a truism that a certain type of force used in one situation may be proportional and appropriate, while the same type of force may be unconstitutional under other circumstances.

## STANDARD OF REVIEW

Rule 26(b)(1), as amended on December 1, 2015, recognizes that "[i]nformation is discoverable . . . if it is relevant to any party's claim or defense and is proportional to the needs of the case." Rule 26 Advisory Committee Notes to 2015 Amendments; *see Sibley v. Choice Hotels Int'l*, No. CV 14-634, 2015 WL 9413101, at *2 (E.D.N.Y. Dec. 22, 2015) (recognizing that "the current version of Rule 26 defines permissible discovery to consist of information that is, in addition to being relevant 'to any party's claim or defense,' also 'proportional to the needs of the case.' ") (internal citation omitted);

Notably, although Rule 26 still permits a wide range of discovery based upon relevance and proportionality, the "provision authorizing the court . . . to order discovery of any matter relevant to the subject matter involved in the action" has been eliminated. Rule 26 Advisory Committee Notes to 2015 Amendments (emphasis added); *see Sibley*, 2015 WL 9413101, at *2 (internal citation omitted). The rationale behind the elimination of this phrase is that—as Plaintiff

attempts to do here—the previous language in the rule "has been used by some, incorrectly, to define the scope of discovery." Rule 26 Advisory Committee Notes to 2015 Amendments.

As to proportionality, the Rules require that the Court consider the following factors:

> the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*See id.* In other words, it is Plaintiff's burden to establish that the information he seeks is <u>both</u> relevant to the claims and defenses and proportional to the needs of the case.

## ARGUMENT

### I. Unsubstantiated Complaints Regarding Sergeant Regin and Officer Rose are Irrelevant and Undiscoverable

As recounted above, Plaintiff asserts that he is entitled to records related to complaints regarding Defendants Regin and Rose's use of force. Defendants have agreed to provide such information, with the caveat that they will not produce complaints that, after a thorough investigation, were found to be unsubstantiated or unfounded. Briefly stated, Defendants' position is that unsubstantiated complaints in additional to being palpably inadmissible, are not probative of any element of Plaintiff's claims against Defendants Regin and Rose, *i.e.*, they are a legal nullity.

At the outset, Plaintiff argues that most district courts in this Circuit have permitted discovery of unsubstantiated complaints relative to an excessive force claims. *See* Dkt. No. 33-1, p. 8. This is an inaccurate treatment of the state of the law. In fact, there is ample precedent from this Circuit that supports Defendants' position. *See Rashada v. City of Buffalo*, No. 11CV873-A, 2013 WL 474751, at *4 (W.D.N.Y. Feb. 6, 2013) ("It is unlikely that documents relating to unsubstantiated claims of excessive force would lead to admissible evidence."); *see also Crenshaw*

*v. Herbert*, 409 Fed. Appx. 428 (2d Cir. 2011) (holding district court did not abuse its discretion by denying plaintiff's motion to compel production of defendant's personnel file, for the file contained no relevant disciplinary records and, even if evidence of a prior *substantiated* excessive force investigation existed, such evidence would be inadmissible to show that defendant acted violently in this instance) (emphasis added).

For example, in *Rashada*, the plaintiff sought to compel defendants to produce documents related to the officer's disciplinary history. *See* 2013 WL 474751 at *4. The Court limited production of disciplinary reports to those that "involved disciplinary action taken against the officer." *See id.*; *see also Wright v. Goord*, No. 04-CV-6003L, 2008 WL 2788287, at *3 (W.D.N.Y. July 15, 2008) (limiting disclosure to documents related to disciplinary action imposed on defendants based upon the use of excessive force); *Diaz v. Goord*, No. 04-CV-6094CJS, 2007 WL 2815735, at *2 (W.D.N.Y. Sept. 25, 2007) (same).

Thus, it is simply not true that there is a consensus in this circuit regarding whether unsubstantiated complaints are *per se* discoverable. *See Thompson v. City of New York*, No. 05 Civ. 3082(PAC)JCF, 2006 WL 298702, at *2 (S.D.N.Y. Feb. 7, 2006) ("Citing grounds such a relevance, improper similar act evidence, and prejudice, courts have consistently denied requests to discover CCRB complaints and other similar documents – especially when the complaints are unsubstantiated."); *Worthy v. City of Buffalo*, No. 11-CV-872A(Sr), 2013 WL 5574624, at *4 (W.D.N.Y. Oct. 9, 2013); *Shaw v. City of New York*, No. 95 Civ. 9325 (AJP), 1997 WL 187352, at ** 1, 5 (S.D.N.Y. April 15, 1997).

Instead, "[d]iscovery of evidence of prior or subsequent misconduct by Defendants must be determined on a case-by-case basis, considering the need and likely relevance of the discovery

as well as the practical difficulties in producing the information." *Hyatt v. Rock*, No. 915CV0089DNHDJS, 2016 WL 6820378, at *4 (N.D.N.Y. Nov. 18, 2016).

In addition to this case law supporting Defendants' position, Plaintiff relevance arguments—i.e., that complaints are necessary to: (i) prove intent, an absence of mistake, and pattern of conduct; and (ii) may point to other possible forms of admissible evidence—are revealed to be superficially unsound.

### a. Motive and intent are irrelevant to Plaintiff's claims

As to Plaintiff's first proffer of relevance, he fails to frame his arguments under the appropriate legal standard relative to his excessive force claim. [4] In that regard, to prevail on an excessive force claim, the plaintiff must show that the officer's conduct was *objectively* unreasonable under the circumstances. *See Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). "Under this standard, the jury need only consider whether the officers acted reasonably <u>in light of the facts and circumstances of the situation they faced</u>, *without regard to their underlying motives or subjective intent toward the suspect*." *Anderson v. Branen*, 17 F.3d 552, 559 (2d Cir. 1994) (citation omitted) (emphasis added). Thus, intent and motive play no role in Plaintiff's claims in any event, and are not issues that will be placed in front of the jury. *See* 3B Fed. Jury Prac. & Instr. § 165:23 (6th ed.) ("The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene"). Rather, Plaintiff is already in possession of all the evidence he needs to prevail or fail on his claims against Sergeant Regin and Detective Rose, namely, the video evidence, the reports relative to the incident in question, and presumably the

---

[4] "'[E]xcept for § 1983's requirement that the tort be committed under color of state law, the essential elements of [excessive force and state law assault and battery claims are] substantially identical.'" *Humphrey v. Landers*, 344 F. App'x 686, 688 (2d Cir. 2009) (quoting *Posr v. Doherty*, 944 F.2d 91, 94-95 (2d Cir. 1991) (brackets in the original)).

eyewitness testimony of his brother and friends.  To the extent that he wants to probe the Defendants' position regarding specifics regarding the particular need for force on the day in question, his counsel is free to depose the Defendants.  There is nothing about Defendants' current objection to the scope of discovery that prevents Plaintiff from obtaining any information needed to prove the claims that are actually pleaded in the Amended Complaint.  How the individual Defendants may have used force on other completely distinct occasions regarding different threats is utterly irrelevant to Plaintiff's individual constitutional and common law tort claims.

Plaintiff relies on *Ismail v. Cohen* for the argument that unsubstantiated complaints are necessary "to show pattern, absence of mistake, and intent." Dkt. No. 33-1, p. 8 (*citing Ismail v. Cohen*, 706 F. Supp. 243, 252-53 (S.D.N.Y. 1989), *aff'd* 899 F.2d 183 (2d Cir. 1990)).  First, the talismanic repetition of the exceptions to Fed. R. Evid. 404(b) are sometimes cited, but—like here—rarely supported or explained.  They are mainly applicable to criminal actions, and thus would have limited applicability to civil case, especially this case.  For example, how is "mistake" of law or fact at issue in this case?  Intent is not an element of Plaintiff's excessive force claim and is not at issue.  Neither is pattern at issue—because use of force situations are as individually distinct as snowflakes.

Second, the Second Circuit has distinguished *Ismail* in a more recent case that is akin to the instant matter. *See*, *e.g.*, *Berkovich v. Hicks*, 922 F.2d 1018 (2d Cir. 1991).  There, plaintiff—during discovery—sought access to Civilian Complaint Review Board ("CCRB") files concerning seven prior complaints lodged against defendant police officer. *See id.* at 1022.  When the district court denied full discovery thereof, plaintiff moved for a new trial, arguing, *inter alia*, the complaints would have led to other admissible evidence and would have proven intent and a pattern of conduct on the part of defendant officer. *See id.* at 1022-23.  Plaintiff argued that the

district court should not have excluded the prior complaints under Federal Rules of Evidence 403 and 404(b). *See id.* at 1021.

In holding that the district court did not err in denying discovery of the seven complaints, the Second Circuit observed that the defendant officer "was exonerated on all of the charges in the prior complaints, except one involving abusive language[,]" which "lessens significantly the probative value of these complaints" and "raises doubt whether [plaintiff] would have been able to prove that the incidents complained of actually occurred." *Id.* The court noted that "similar act evidence is relevant <u>only</u> if the jury <u>can reasonably conclude that the act occurred and that the defendant was the actor."</u> *Id.* (citing *Huddleston v. United States*, 485 U.S. 681, 689 (1988)).

The *Huddleston/Berkovich* holding is significant because the only means available to the Plaintiff to substantiate previously unsubstantiated claims is to prove them in the case in chief. , Therefore, unsubstantiated complaints can never be relevant evidence without embarking on expensive, peripheral side-litigation and mini-trials relative to the merits and facts of the completely different incidents. In addition to being an unsound evidentiary proposition, such a theory of liability would also be fatally and unfairly prejudicial to the defendants.

While Plaintiff also asserts that "intent" is particularly appropriate here where Sergeant Regin denies that he used a chokehold against Plaintiff. *See* Dkt. No. 33-1 (citing *Lewis v. City of Albany Police Dep't*, 547 F. Supp. 2d 191, 200 (N.D.N.Y. 2008), *aff'd*, 332 F. App'x 641 (2d Cir. 2009)), the argument misses the mark. Regin's position is one of fact, not of intent, demonstrated by what he actually physically did and additional external objective facts such as whether the Plaintiff's neck was injured and/or whether he lost consciousness. As recounted above, this is a case where there is video evidence of the alleged use of excessive force. This case is not like *Lewis* where the prior complaints were relevant to prove the identity of the officer when he claimed he

was not involved in the alleged assault, or to prove some motive relative to the victim's race. *See id.*[5] In sum, Plaintiff fails to make the requisite showing that the requested material is relevant, necessitating denial of his motion to compel.

*b. Deference must also be given to the documents protected status.*

Courts in this Circuit facing similar motions to compel in excessive force cases have continued to give deference to New York Civil Rights Law § 50-a. *See, e.g., Adamson v. City of Buffalo*, No. 11CV663A, 2013 WL 821182, at *1 (W.D.N.Y. March 5, 2013); *Hill v. Curcione*, No. 07CV357, 2012 WL 1114003, at *3 (W.D.N.Y. March 30, 2012). Specifically, § 50-a was intended to "prevent time consuming and perhaps vexatious investigation into irrelevant collateral matters in the contest of a civil or criminal action" and "avoid embarrassment and harassment of testifying officers by cross-examination concerning 'unsubstantiated and irrelevant' matters in their personnel files." by denying plaintiffs' demands for the production of unsubstantiated complaints. *See Adamson*, 2013 WL 821182, at *1; *Hill*, 2012 WL 1114003, at *3; *see also Matter of Capital Newspapers v. Burns*, 67 N.Y.2d 562 (1986). This is a recognized factor that weighs in favor of a more measured, narrow approach to defining the scope of permissible discovery.

*c. Even if unsubstantiated former complaints are discoverable—Plaintiff's currently articulated scope of discovery is overbroad*

At best, the case law Plaintiff cites grants them authority to seek discovery relative to complaints "of a similar nature" to the underlying action. *See Frails v. City of New York*, 236

---

[5] Plaintiff heavily relies on *Gross v. Lunduski*, 304 F.R.D. 136, 146 (W.D.N.Y. 2014), where the court stated that it "adhere[d] to those cases which hold that even unsubstantiated complaints are useful to "resourceful counsel" as potential "leads" to other "evidence" relevant "to the issues of intent or other facts in issue," and therefore subject to production." *See id.* (citation omitted). *Gross*, however, incorrectly states the standard for discoverability. And, indeed is contrary to the post-2015 amendments to Rule 26. Discoverable information must be relevant *in and of itself*— not merely calculated to lead to something relevant.

F.R.D. 116, 117 (E.D.N.Y. 2006).  Thus, Plaintiff's discovery must, at minimum, be limited to prior instances where someone complained that Sergeant Regin used a choke hold or Detective Rose used his knee to pin an arrestee down.  Opening the door to *all* previous instances of excessive force is inappropriate.

Nevertheless, Defendants contend that they have more than satisfied their discovery obligations by producing information related to substantiated complaints of excessive force and information related to any disciplinary actions taken against Defendants Regin and Rose concerning allegations of excessive force.  As such, Defendants respectfully request that the Court deny Plaintiff's Motion to Compel the production of unsubstantiated complaints against the named Defendants.

## II.     Plaintiff is not entitled to the discovery he seeks relative to his pleaded *Monell* claim

Plaintiff is limited to the pursuit of discovery on the claims he has actually raised in his Complaint.  As set forth above, the only *Monell* claim remotely contained within the Complaint is the "formal policy" variation of *Monell*.  There is no "de facto custom, policy or practice" claim, nor is there a "deliberate indifference" claim pleaded in the Amended Complaint.  The majority of the cases cited by Plaintiff for the proposition that unsubstantiated complaints are relevant under *Monell*, involve types of *Monell* claims that are not pleaded in this action.

A party is not entitled to discovery for the development of new claims that are not pleaded.  *See, e.g., Heredia v. Heyman*, 203 F.R.D. 112, 113 (S.D.N.Y.2001) (interrogatories seeking to establish pattern of discrimination and conspiracy to cover up civil rights violations were outside scope of complaint and thus irrelevant).  "A litigant may not use discovery to determine whether there is a cause of action." *Hughes v. LaSalle Bank, N.A.*, No. 02CIV.6384MBMHBP, 2004 WL 414828, at *1 (S.D.N.Y. Mar. 4, 2004) (citing *Segan v.*

*Dreyfus Corp.*, 513 F.2d 695 (2d Cir.1975). "The purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists." *See id.* (citing *Jones v. Capital Cities/ABC Inc.*, 168 F.R.D. 477, 480 (S.D.N.Y.1996).

Thus*,* evidence of unsubstantiated prior claims has no plausible relationship to the only pleaded *Monell* claim in the Amended Complaint—that the City's Use of Force written policy is unconstitutional. As to causation, he must prove that the policies, <u>as written</u>, were the moving force behind the underlying constitutional violation. Invariably, Plaintiff must only do so through the facts relative to the incident and Officer Regin alone.[6]

Even if Plaintiff had alleged a "deliberate indifference" *Monell* claim, *unsubstantiated* allegations of similar misconduct—by definition—could not be used to prove such a claim Plaintiff's *Monell* claim. *See Sealey v. Fishkin*, 1998 WL 1021470, at \*3 (E.D.N.Y. Dec.2, 1998) (unsubstantiated allegations of misconduct do not prove City's deliberate indifference); *Marcel v. City of New York*, 1990 WL 47689, at \*8–9 (S.D.N.Y. Apr.11, 1990) (unsubstantiated CCRB complaints do not support claim of municipal failure to train); *Berkovich*, 922 F.2d at 1023 (holding it is "unlikely" that any purported propensity evidence contained in unsubstantiated complaints "could have been introduced to establish" a *Monell* claim).

In fact, one the cases Plaintiff cites holds that unsubstantiated complaints are not probative, i.e., discoverable, relative to *Monell* liability. *See*, *e.g.*, *Pacheco v. City of New York*, 234 F.R.D. 53 (E.D.N.Y. 2006). In *Pacheco*, a false arrest and excessive force case, the plaintiff sought to

---

[6] Plaintiff asserts that unsubstantiated complaints of excessive force could "expose a nexus between the policies and actions of Defendant officers." *See* Dkt. No. 33-1 at 20. Maybe true where the *Monell* claim is premised on a failure to supervise; but, Plaintiff fails to explain how an unsubstantiated complaint regarding another officer at another time would play a role in proving that the policies, as written, caused Sergeant Regin to employ a "chokehold" on T.H. during this specific incident. Causation here is more limited.

compel production of CCRB and Internal Affairs Bureau ("IAB") records concerning the two

defendant police officers on the basis that, *inter alia*, such records were material and necessary to

prove *Monell* liability. *See id.* at 54. Specifically, plaintiff's *Monell* claim rested on an allegation

that the defendant City ignored evidence that the individual defendants had a propensity to make

false arrests and use excessive force. *See id.* at 55. The Court squarely held "unsubstantiated

instances of misconduct unrelated to false arrest or excessive force are simply irrelevant to the

claim as it is pleaded in the complaint." *Id.* The Court further doubted "whether unsubstantiated

instances of any kind of misconduct can ever be used to prove a *Monell* claim." *Id.* (*citing Sealey*

and *Marcel*).[7]

Not surprisingly, Courts in this Circuit have repeatedly found unsubstantiated complaints

to be insufficient to prove a *Monell* claim. Such has been held true even where plaintiffs

havealleged a *Monell* claim against a municipality under a deliberate indifference theory. *See*

*Thomas v. Roach,* 165 F.3d 137, 145 (2d Cir. 1999) (holding four complaints against defendant

officer – two of which exonerated defendant officer, one of which named the wrong officer, and

the fourth of which was held to be "unfounded" – were insufficient to show that defendant City

had a policy of deliberate indifference that led to plaintiff's injuries); *Manville v. Town of Greece*,

892 F. Supp. 2d 469, 482 (W.D.N.Y. 2012) (holding two complaints over a three-year period –

only one of which was substantiated – was insufficient to show that defendant Town had a policy

of deliberate indifference that led to plaintiff's injuries); *Walker v. City of New York*, No. 14-CV-

---

[7] Another case Plaintiff cited, *Frails v. City of New York*, specifically held that "[u]nsubstantiated
allegations of similar misconduct are not likely to prove plaintiff's *Monell* claim either." *Frails v.
City of New York*, 236 F.R.D. 116, 118 n.1 (E.D.N.Y. 2006) (citing *Sealey*, 1998 WL 1021470, at
*3 (unsubstantiated allegations of misconduct do not prove City's deliberate indifference);
*Marcel*, 1990 WL 47689, at *8–9 (unsubstantiated CCRB complaints do not support claim of
municipal failure to train)).

808 (ER), 2015 WL 4254026, at *11 (S.D.N.Y. July 14, 2015) (holding CCRB and IAB complaints, as well unsubstantiated lawsuits, do not support the plaintiff's *Monell* claim under such a theory, for "[i]t would be inappropriate for the Court to find that the City was acting with deliberate indifference by failing to discipline officers who were never deemed to have violated any individual's constitutional rights").

Indeed, very recent case law from this Circuit confirms that unsubstantiated complaints are not relevant to prove a *Monell* claim. *See Alwan v. City of New York*, No. 14-CV-4556 (NGG)(VMS), 2018 WL 2048366 (E.D.N.Y. May 2, 2018). In *Alwan*, an excessive force case, plaintiff asserted a *Monell* claim under a deliberate indifference theory alleging defendant City failed to train, supervise, or discipline its police officers regarding their use of force. *See id.* at *3. In holding that plaintiff failed to adduce "any evidence from which a rational factfinder could conclude that the City acted with deliberate indifference," however, the court specifically addressed at least eleven unsubstantiated complaints and two other civil rights lawsuits against defendant police officer. *See id.* at *8. In so doing, the court held that, to the extent the complaints "were found to be unsubstantiated or were settled without an admission of liability by the City," … "those complaints do not provide a valid basis for concluding that the City was deliberately indifferent to [defendant officer's] use of excessive force, because they do not, by themselves, establish that he used excessive force in the first place." *Id.*; *cf. Hart v. City of Binghamton*, No. 10-CV-1064, 2012 WL 1565085, at *7 (N.D.N.Y. May 2, 2012) ("[T]he mere fact that the City has been sued does not mean that the prior lawsuits were meritorious.").

Thus, case law confirms that only documented and factually supportable exercises of unreasonable force could put the City on notice that its policies created an unreasonable risk of constitutional violations.

Plaintiff attempts to revive his overbroad discovery requests by asserting that notice can sometimes be proven via "repeated civilian complaints that are inadequately addressed, or a practice of not fully investigating problematic behavior," *see* Dkt. No. 33-1 at 18, however, these are theories of liability Plaintiff did not allege anywhere in this complaint. Plaintiff's attempt to mold his Complaint to satisfy his arguments in this motion is further displayed in his reliance on *Outlaw v. City of Hartford*. *See* Dkt. No. 33-1 at 21-23 (citing *Outlaw v. City of Hartford*, 884 F.3d 351 (2d Cir. 2018)). That case, unlike the present, involved allegations that previous complaints against the defendant were not fully investigated—a claim totally lacking in this case. *See Outlaw*, 884 F.3d at 379-80 (noting that the plaintiff's *Monell* claim rested on his allegation "that the municipality had notice of complaints of the use of such force but repeatedly failed to make any meaningful investigation into such charges"). In any event, the Second Circuit in *Outlaw* recognized that unsubstantiated and unrelated complaints are irrelevant. *See id.* (stating that "[t]he simple fact that claims were made and that some of them were settled would not permit an inference that the City was deliberately indifferent in the supervision of HPD officers with respect to the use of excessive force").

Thus, though Plaintiff argues he has "tailored" and "narrowed" his request, *see* Dkt. No. 33-1 at 19, he nevertheless asks this Court to compel the production of documents and information that courts in this Circuit have repeatedly and explicitly held are irrelevant to a *Monell* claim. As such, Defendants respectfully request that the Court deny Plaintiff's Motion to Compel the production of unsubstantiated information about other SPD incidents involving chokeholds or the use of deadly force against juveniles.

## CONCLUSION

Defendants respectfully request that the Court deny Plaintiff's Motion to Compel (a) unsubstantiated complaints against Defendants and (b) information about the Syracuse Police Department's use of chokeholds and deadly force against juveniles, together with such other and further relief the Court deems just and proper.

DATED: July 7, 2018       Respectfully submitted,


*/s/ John G. Powers*
John G. Powers

HANCOCK ESTABROOK, LLP
John G. Powers, Esq. (Bar Roll #: 508934)
Paul J. Tuck, Esq. (Bar Roll #: 520814)
*Attorneys for Defendants*
AXA Tower I, Suite 1500
100 Madison Street
Syracuse, NY 13202
(315) 565-4500
jpowers@hancocklaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused the foregoing Motion and all referenced supporting papers to be filed electronically with the Clerk of the District Court, Northern District of New York using the CM/ECF system, which sent contemporaneous notification of such filing to all counsel who have made an appearance in this action.

<u>*s/ John G. Powers, Esq.*</u>
(Bar Roll No. 508934)