IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
_____

T.H., by his parent and natural guardian
TIESHA SHEPHERD,

       Plaintiff,    Civil Action No.
               5:17-CV-1081 (GTS/DEP)

 v.

CITY OF SYRACUSE; *et al.*,

       Defendants.
_____

APPEARANCES:       OF COUNSEL:

FOR PLAINTIFF:

NEW YORK CIVIL LIBERTIES   KEVIN E. JASON, ESQ.
UNION FOUNDATION      ERIN B. HARRIST, ESQ.
125 Broad Street, 19th Floor    CHRISTOPHER T. DUNN, ESQ.
New York, NY 10004

FOR DEFENDANTS:

HON. KRISTEN E. SMITH     CHRISTINA F. DeJOSEPH, ESQ.
CITY OF SYRACUSE       Assistant Corporation Counsel
CORPORATION COUNSEL
233 E. Washington Street, Room 300
Syracuse, NY 13202

HANCOCK ESTABROOK, LLP   JOHN G. POWERS, ESQ.
AXA Tower I, Suite 1500      PAUL J. TUCK, ESQ.
100 Madison Street
Syracuse, NY 13202

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

## DECISION AND ORDER

This is a civil rights action brought on behalf of plaintiff T.H., a minor, by his parent and natural guardian, Tiesha Shepherd. In her complaint, as amended, plaintiff asserts claims under the Fourth Amendment to the United States Constitution, together with relevant provisions of the New York Constitution and New York common law, against the City of Syracuse ("City") and two police officers employed by the City. Plaintiff's amended complaint stems from an incident that occurred in September 2016, when the two individual officers allegedly applied excessive force when placing T.H., who was fourteen years old at the time, under arrest.

After conferring with defendants' counsel in an effort to obtain the requested materials without success, plaintiff now moves for an order compelling defendants to produce certain documentation concerning allegations of the use of force by the individual defendant-officers and other members of the Syracuse City Police Department ("SPD"), including both substantiated and unsubstantiated complaints. For the reasons set forth below, plaintiff's motion is granted, in part, and otherwise denied.

I. BACKGROUND

The sequence of events forming the basis of plaintiff's claims was set in motion in September 2016, when defendant Rose, a school resource officer stationed at a local high school, notified defendant Regin, an SPD sergeant and defendant Rose's supervisor, that a fight involving students had commenced near the high school. Dkt. No. 4 at 5; Dkt. No. 34 at 5. After the two defendant-officers arrived on the scene, the altercation was initially broken up. Dkt. No. 4 at 6; Dkt. No. 34 at 5. The assembled crowd, however, migrated to a different location, where fighting resumed. *Id.*

Several police officers, including defendants Rose and Regin, began arresting students involved in the fighting. Dkt. No. 34 at 5. T.H.'s brother was one of the students arrested at the scene. Dkt. No. 4 at 6; Dkt. No. 34 at 5. When T.H. saw his brother in handcuffs he attempted to intervene, at which point he was physically restrained by defendant Regin. Dkt. No. 4 at 6, 7; Dkt. No. 34 at 5-6. Plaintiff maintains that, at that point, defendant Regin placed T.H. in a chokehold[1] for over forty-five seconds, causing him

---

[1] The parties disagree regarding the definition of the term "chokehold."

3

to gasp for air and eventually lose consciousness.[2] Dkt. No. 4 at 7-8. After T.H. was initially restrained by defendant Regin, he was taken to the ground, where, according to plaintiff, defendant Rose slammed his knee onto T.H.'s back and neck, smashing his chin on the ground and causing him to sustain an injury that eventually required stitches. *Id.* at 8-9. T.H. was later found guilty as a juvenile of second-degree obstruction of governmental administration in violation of N.Y. Penal Law § 195.05 based upon his conduct during the incident. Dkt. No. 34 at 9.

II.  PROCEDURAL HISTORY

Plaintiff commenced this action on September 26, 2017, and filed an amended complaint on October 18, 2017. Dkt. Nos. 1, 4. In her complaint, as amended, plaintiff alleges that T.H.'s rights under the Fourth Amendment to the United States Constitution, Article I, § 12 of the New York Constitution, and New York common law were violated during the arrest. Dkt. No. 4. Issue was joined in December 13, 2017, Dkt. No. 11, and discovery in the action is underway.

On June 22, 2018, plaintiff filed a motion requesting the issuance of

---

[2] Defendant Regin denies the use of a chokehold or that he had any intent to choke T.H. In addition, defendants contend that T.H. never lost consciousness during the incident at issue, and that he has admitted as much. Dkt. No. 34 at 9.

an order requiring defendants as follows:

> (1) [P]roduce all complaints, including unsubstantiated complaints, alleging the use of excessive force by Defendant Officers, (2) identify all lawsuits and notices of claims alleging the use of excessive force by Defendant Officers, (3) produce use-of-force reports, incident reports, and internal investigation documents for the past five years involving either (a) a chokehold or (b) deadly force on a juvenile, and (4) identify all civil lawsuits and notices of claim alleging the use of chokeholds or use of deadly force on a juvenile within the last five years.

Dkt. No. 33 at 1; *see also* Dkt. No. 33-1 at 6, 24. Defendants responded to plaintiff's motion on July 7, 2018. Dkt. No. 34. In their opposition papers, defendants advised the court that they have agreed to produce discovery materials within the following categories:

> (1) [D]ocuments and information relating to disciplinary actions taken against Defendants Regin and Rose concerning allegations of improper use-of-force, as well as (2) documents and information related to any complaints against defendants Regin and Rose concerning their alleged improper use-of-force which have been substantiated whether internal or external, and (iii) a list of any lawsuits and all accompanying documents related to substantiated complaints of excessive use-of-force against any SPD police officer.

*Id*. at 10. They argue, however, that the remaining requested materials do not fall within the scope of discovery as defined under the Federal Rules of

5

Civil Procedure. *Id.* Oral argument was heard in connection with plaintiff's motion on July 12, 2018, at which time I reserved decision.

III.     DISCUSSION

    A.     Legal Standard Governing Motions to Compel Discovery

The scope of discovery in a federal civil action is governed by Rule 26(b) of the Federal Rules of Civil Procedure. In relevant part, that rule provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Under this provision, the bounds of permissible discovery in a civil action are generally broad. *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 114 (2d Cir. 1992) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Significantly, these bounds and are not cabined by rules governing admissibility of evidence at trial. Fed. R. Civ. P. 26(b)(1); s*ee Mohr v. Sec. Credit Servs. LLC*, No. 14-CV-0982, 2016 WL 6638198, at *1 (N.D.N.Y. July 6, 2016.) (Hummel, M.J.).

The touchstone of the scope of discovery is relevance; discovery sought must in the first instance be relevant to a party's claim or defense.[3] Fed. R. Civ. P. 26(b)(1); *see Lapointe v. Target Corp.*, No. 16-CV-0216, 2017 WL 1397317, at *2 (N.D.N.Y. Mar. 6, 2017) (Hummel, M.J.). When moving to compel discovery, a requesting party must demonstrate at least the possibility of a nexus between the information sought and the claims or defenses of a party. *Condit v. Dunne*, 225 F.R.D. 100, 106 (S.D.N.Y. 2004); *accord Royal Park Investments SA/NV v. Deutsche Bank Nat'l Trust Co.*, No. 14-CV-4394, 2016 WL 4613390, at *7 (S.D.N.Y. Aug. 31, 2016). If the moving party meets this "relatively low threshold," the non-moving party must show that, "despite the broad and liberal construction afforded the federal discovery rules," the request lacks relevance and the information sought is, therefore, not discoverable. *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014); *accord Royal Park Investments SA/NV*, 2016 WL 4613390, at *6-7.

---

[3] The Federal Rules of Evidence define relevance as follows:

> Evidence is relevant if:
>
> (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and
>
> (b) the fact is of consequence in determining the action.

Fed. R. Evid. 401.

Rule 26(b) recognizes certain specific, potentially overriding considerations that can effectively circumscribe the required production of otherwise relevant discovery. For example, the rule expressly encompasses a rule of proportionality, providing that a party may only obtain discovery regarding information "that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Under Rule 26(b), the proportionality of a discovery request is informed by several considerations, including the following:

> [T]he importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

In addition to evaluating considerations of relevance and the rule of proportionality, Rule 26 authorizes a court to restrict discovery sought by a party if the information requested "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i); *see Saylavee LLC v. Hockler*, No. 04-CV-1344, 2005 WL 1398653, at *1-2 (D. Conn. June 14, 2005). Courts may issue an order

"protect[ing] a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1); *Saylavee*, 2005 WL 1398653, at *1-2. "In determining whether a discovery request is burdensome the court must weigh the burden to the producing party against the need of the party seeking the information." *Cook v. United States*, 109 F.R.D. 81, 85 (E.D.N.Y. 1985).

    B.    <u>The Relevance of Unsubstantiated Complaints Against the Individual Defendants</u>

As part of her motion, plaintiff requests an order requiring defendants to produce all complaints, whether substantiated or not, alleging the use of excessive force by defendants Rose and Regin, as well as evidence of all lawsuits and notices of claim alleging the use of excessive force by those two defendants. Dkt. No. 33-1 at 8. In support of that request, plaintiff argues that this information could help establish intent, absence of mistake, or a pattern – all of which may justify the admissibility of evidence of past wrongs under Federal Rule of Evidence 404(b)(2).[4]

The focus of plaintiff's Rule 404(b) argument is upon intent and

---

[4] Although more often implicated in the criminal context, Rule 404(b) has been applied by courts in civil cases as well. *Berkovich v. Hicks*, 922 F.2d 1018, 1022 (2d Cir. 1991).

9

absence of mistake. It is true that, generally speaking, evidence of similar misconduct may be admissible at trial to show intent, as long as sufficient evidence supports a jury finding that the act complained of did occur. *Ismail v. Cohen*, 706 F. Supp. 243, 252 (S.D.N.Y. 1989), *aff'd*, 899 F.2d 183 (2d Cir. 1990); *accord Frails v. City of N.Y.*, 236 F.R.D. 116, 117 (E.D.N.Y. 2006). The difficulty with this type of evidence, of course, is that proof of unsubstantiated claims offered at trial invites, of necessity, the need to conduct mini-trials into unrelated incidents to determine whether they in fact occurred and, if so, whether they can then be applied under Rule 404(b). *Hardy v. Town of Greenwich*, 629 F. Supp. 2d 192, 197 (D. Conn. 2007). This is the type of ancillary issue that Rule 403 of the Federal Rules of Evidence counsels against.[5] *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 556 (E.D.N.Y. 2011) ("[B]ecause the CCRB complaints were not substantiated, the court finds that under Rule 403, the probative-prejudice balancing test weighs heavily in favor of excluding the

---

[5] That rule provides as follows:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403.

evidence.").

In this instance, moreover, plaintiff has failed to establish relevance of the requested information under an intent theory. Plaintiff's excessive force claim against defendants Regin and Rose does not require the showing of intent because, when evaluating a section 1983 excessive force claim, factfinders apply an objective reasonableness standard and do not consider intent as an element. *Anderson v. Branen*, 17 F.3d 552, 559 (2d Cir. 1994) (holding "the jury need only consider whether the officers acted reasonably in light of the facts and circumstances of the situation they faced, without regard to their underlying motives or subjective intent"). Although defendants deny using a chokehold "or any *intent* to choke" plaintiff, this denial of intent does not interject an element of intent into plaintiff's excessive force claim. Dkt. No. 11 at 6 (emphasis added). Intent to choke is not coextensive with intent to apply excessive force. Simply stated, because intent is not an element of plaintiff's section 1983 excessive force claim, evidence of unsubstantiated claims is not relevant under Rule 404(b)(2) to intent and therefore is not discoverable under Rule 26(b) under this theory. *Anderson*, 17 F.3d at 559.

While plaintiff cannot rely on the intent element of Rule 404(b)(2), defendants' denial of any intent on the part of defendant Rose to choke the

11

plaintiff could potentially implicate the "absence of mistake" prong of the rule. Evidence of defendant Rose's use of chokeholds in other circumstances could provide plaintiff with evidence that a chokehold, if a jury finds that one was utilized, was not the result of a mistake but instead was consistent with a pattern of conduct on the part of defendant Rose. Accordingly, while I believe that, in general terms, plaintiff has failed to demonstrate a nexus between the excessive force claim in this case and complaints alleging the use of excessive force complaints, and lawsuits and notices of claim involving the similar claims against defendants Regin and Rose, I do find that defendants should be required to produce any complaints, whether or not they have been substantiated, alleging that defendant Rose applied a chokehold or choke-like pressure upon an individual, together with lawsuits and notices of claim involving similar allegations.

    C.    <u>Plaintiff's Discovery Regarding the *Monell* Claim</u>

The second prong of plaintiff's motion seeks information regarding claims, again whether or not substantiated, concerning the use of a chokehold or deadly force on a juvenile by any departmental officer within the past five years. Dkt. No. 31 at 3-4. Plaintiff seeks this information in order to support his claim against the City of Syracuse. *Id.*

12

It is well-established that local governments may be sued for constitutional deprivations. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 707 (1978). In his complaint, plaintiff asserts that the policies of the Syracuse City Police Department led to the constitutionally violative conduct on the part of the two individual defendants. Dkt. No. 4 at 9-11. To succeed in asserting a *Monell* claim against a municipality, a plaintiff must prove that "action pursuant to official municipal policy caused [his] injury." *Connick v. Thompson*, 563 U.S. 51, 51 (2011) (internal quotation marks omitted); *accord Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011).

It is important to note that for purposes of establishing a *Monell* claim, a plaintiff is not limited to written policies. *See Monell*, 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under [section] 1983."). Governmental practices may be so widespread that, even in the absence of an official decision by a government lawmaker, the practices will constitute official policy of the municipality, which may give rise to municipal liability. *Connick*, 563 U.S. at 51.

Defendants argue that plaintiff has effectively limited his *Monell* claim to the City's written policies. Dkt. No. 34 at 18. Accordingly, defendants contend this limited *Monell* claim prohibits the court from compelling discovery of the documents now at issue because they are not relevant to proving whether the written policies caused a constitutional violation. *Id.*

Defendants are correct in pointing out that there is a policy-based argument in plaintiff's *Monell* claim. Dkt. No. 4 at 9-11. In the amended complaint, plaintiff does not allege that defendant City of Syracuse facilitated particular customs or practices that have resulted in the constitutional deprivations. *Id.*

This notwithstanding, the prior incidents and complaints regarding SPD officers, even those that are unsubstantiated, are relevant to plaintiff's claims. *See Zhao v. City of N.Y.*, No. 07-CV-3636, 2007 WL 4205856, at *2 (S.D.N.Y. Nov. 21, 2007) (holding all complaints against police officers are relevant when a plaintiff is asserting a *Monell* claim); *see also Younger v. City of N.Y.*, No. 03-CV-8985, 2006 WL 1206489, at *1 (S.D.N.Y. May 2, 2006) ("[P]laintiff has named the City and pursues a *Monell* theory, and that this alone is sufficient to demonstrate potential relevance."). As plaintiff argues, the reports and internal investigation

materials are vital to establishing a *Monell* claim in this instance, including to allow plaintiff to learn how the relevant SPD policies have actually been applied in practice.

In her motion papers, plaintiff met the relatively modest burden of demonstrating potential relevance of the requested information. Specifically, if plaintiff's allegations prove to be true insofar as she alleges that these policies have caused the constitutional deprivation alleged in this instance, then evidence of other incidents involving SPD officers using chokeholds or excessive force against juveniles may assist in illustrating a causal relationship between these policies and constitutional deprivations.

Because plaintiff has met this initial burden, the burden now shifts to defendants to establish that the requests lack relevance, "despite the broad and liberal construction afforded the federal discovery rules." *John Wiley & Sons, Inc.*, 298 F.R.D. at 186; *accord Royal Park Investments SA/NV*, 2016 WL 4613390, at *7. Here, defendants have failed to meet this burden. They merely insist that "evidence of unsubstantiated prior claims has no plausible relationship to the only pleaded *Monell* claim in the Amended complaint[.]" Dkt. No. 34 at 19. This conclusory statement is insufficient to satisfy their burden of demonstrating that the request is irrelevant to plaintiff's claim against defendant City of Syracuse.

In addition to the causation aspect of plaintiff's *Monell* claim, plaintiff's claim also advances a failure-to-train theory. Specifically, plaintiff alleges that plaintiff's injuries occurred as a result of the City of Syracuse's failure to train and that "SPD officers are not trained and instructed on how to use chokeholds or on the risks and dangers of chokeholds." Dkt. No. 4 at 12.

A municipality's "policy of inaction" that results in constitutional deprivations is "the functional equivalent of a decision by the city itself to violate the Constitution." *Connick*, 563 U.S. at 61-62 (internal quotation marks omitted); *accord Cash*, 654 F.3d at 334. In order to demonstrate that there was a policy of inaction, a plaintiff must show that the municipality "exhibited deliberate indifference to constitutional deprivations caused by subordinates." *Outlaw v. City of Hartford*, 884 F.3d 351, 372 (2d Cir. 2018) (alterations and internal quotation marks omitted). Additionally, plaintiff must demonstrate that there was an obvious need to provide safeguards against the constitutional violations. *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 127 (2d Cir. 2004); *accord Outlaw*, 884 F.3d at 373. This can be demonstrated through "proof of repeated complaints of civil rights violations." *Vann v. City of N.Y.*, 72 F.3d 1040, 1049 (2d Cir. 1995).

Limiting the scope of discovery to substantiated claims against defendants Rose and Regin, and even including evidence of complaints against defendant Rose for the use of chokeholds, will be insufficient to meet plaintiff's needs. Plaintiff is entitled to probe whether defendant City of Syracuse failed to seriously investigate claims of a similar nature that had some validity to them. *See Outlaw*, 884 F.3d at 380 ("Municipal policy of deliberate indifference to the use of excessive force by police officers may be shown by evidence that the municipality had notice of complaints of the use of such force but repeatedly failed to make any meaningful investigation into such charges[.]"); *see also Vann*, 72 F.3d at 1049 ("[D]eliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall future incidents."). Additionally, to investigate the extent of defendant City of Syracuse's failures to train, unsubstantiated complaints against all SPD officers will be required. *Outlaw*, 884 F.3d at 380. Otherwise, plaintiff could effectively be unable to prove the types of systematic failures that are required to be shown in a failure to train claim. *Id.*

Many of the cases relied upon by the defendant in opposing plaintiff's motion involve applications for the entry of summary judgment

17

and address admissibility, whether under Rule 404(b)(2) or otherwise, of evidence of the type now sought. *See, e.g., Sealey v. Fishkin*, No. 96-CV-6303, 1998 WL 1021470, at *3 (E.D.N.Y. Dec. 2, 1998); *Marcel v. City of N.Y.*, No. 88-CV-7017, 1990 WL 47689, at *9 (S.D.N.Y. Apr. 11, 1990). As was previously noted, however, it is important to note that the scope of discovery is not limited by rules of admissibility. Fed. R. Civ. P. 26(b)(1); *see Mohr*, 2016 WL 6638198, at *1.

In sum, I find that the past incidents and complaints of the limited nature sought by plaintiff are relevant to the policy and practice and failure to train allegations in plaintiff's amended complaint. Accordingly, the requested documents regarding plaintiff's *Monell* claim are discoverable.

IV. SUMMARY AND ORDER

After carefully considering plaintiff's pending motion to compel discovery, I conclude that defendants should be required to produce some of the documents sought, including evidence of complaints, whether or not substantiated, against defendant Rose alleging use of a chokehold or choking-like force, and information regarding complaints, whether substantiated or not, of the use of either a chokehold or deadly force on a juvenile within the past five years by any member of the SPD. Accordingly, it is hereby

18

ORDERED as follows:

(1)   Plaintiff's motion to compel discovery (Dkt. No. 33) is GRANTED in part, and DENIED in part.

(2)   In addition to the documents and information that it has previously agreed to produce, defendants are required to produce, on or before August 31, 2018, to plaintiff's counsel for review, the following documents:

    (a)  Evidence of complaints, both substantiated and unsubstantiated, alleging that defendant Rose applied a chokehold or engaged in choke-like uses of force against an individual.

    (b)  Evidence of use-of-force reports, incident reports, and internal investigation documents related to incidents over the past five years involving either a chokehold or the use of deadly force on a juvenile, and evidence of civil lawsuits and other notices of claims alleging the use of chokeholds or the use of deadly force on a juvenile within the past five years.

(3)   No costs or attorney's fees are awarded to any party in connection with plaintiff's motion to compel.

(4)   The clerk is respectfully directed to forward copies of this order to the parties pursuant to the court's local rules.

Dated: August 7, 2018
Syracuse, New York

David E. Peebles
U.S. Magistrate Judge